# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Secret Lincoln,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Apex Human Services, LLC and Mohamed Lamin Sesay<br><br>　　　　Defendants. | Case No. 2:21-cv-0032 |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(a) BASED UPON:

a) **Plaintiff's independent RN Contractor Status as Documented by Plaintiff's Executed Independent Contractor Agreement with Defendants (exhibit "A"); and b) Defendants Never Terminating, Changing or Threatening the Terms of Plaintiff's Contract at Any Time (other than having less in-home work available for Plaintiff due to Covid-19 restrictions limiting in-home nursing visits)**

1. Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Fed.R.Civ.P. 56(c).

2. To avoid a ruling pursuant to the summary judgment standard, disputes must be both (1) material, i.e., predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law and (2) genuine, i.e., the evidence must support a finding by the court that a reasonable jury could return a verdict for nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

3. Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial. Cella v. Villanova U., 2003 U.S. Dist. LEXIS 2192, 2003 WL 329147 at *6 (Feb. 12, 2003) (citing Celetox, 477 U.S. at 322-23). In such circumstances, there is only one reasonable conclusion regarding the potential verdict under the governing law and judgment must be awarded to the moving party. Anderson, 477 U.S. at 250 (finding that the standard is the same as for a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a)). *Cherry v. Garner*, No. 03-cv-01696, 2004 U.S. Dist. LEXIS 26060, at *11-13 (E.D. Pa. Dec. 30, 2004).

4. There are three independent grounds warranting the entry of summary judgment against the Plaintiff herein and in favor of Defendants.

5. First and foremost, Plaintiff has produced no evidence, because none exists, that she was *anything other than an independent contractor providing visiting in-home nursing services to the clientele of Defendant Apex. That incontestable fact alone should warrant the dismissal of the instant case.*

6. Attached hereto as exhibit "A" is the entire Independent Contractor Agreement executed by Plaintiff, which Plaintiff has not denied executing nor has she denied that the signature appearing on page 4 is her own. As in <u>Clackamas</u>, *infra*, Plaintiff was responsible for procuring her own professional liability insurance.

7. The mutually executed "Independent Contractor Agreement" consisting of 23 paragraphs has the word CONTRACTOR in *capital letters* in paragraphs 1, 2, 4, 5, 8, 10, 11, 12, 13 (which discusses payment per visit and payment per hour), 14, 15, 17, 18, 19, 20, 21, and 22 of the 23 total paragraphs. This amounts to 17 of the 23 paragraphs, i.e., 74% of the 'INDEPENDENT CONTRACTOR AGREEMENT" having the word CONTRACTOR in capital letters and defeats any claim that the Agreement was in "legal eaze" or otherwise unintelligible to the average person.

8. It was signed by Plaintiff on *1/15/19*, right beneath the EIN/SSN line (which Plaintiff filled in with her social security number).

9. In addition, exhibit 2 is "Certificate of Liability Insurance," obtained by Plaintiff Secret Lincoln and with the name of Secret Lincoln as the sole insured.

10. In addition, exhibit 3 is the W-9 form so Plaintiff could receive 1099s for the income she earned as an independent contractor.

11. In her deposition, Plaintiff did not deny that she signed it, but did testify that she did so without reading it (which is of no avail to Plaintiff). <u>See</u> Plaintiff's deposition testimony NT 32, in which she testified that "if my signature is on something, I'm

telling you right now that nothing about being an independent contractor, not an independent contractor, was explained to me." On NT 33, she further testified that "I am not sure 'cause I signed a lot of documents. Some of them, to be honest, I would just sign it and not even paying (sic) attention, so I'm really not sure." NT 32—33 of Plaintiff's deposition excerpts are collectively attached hereto as exhibit "B."

12. Under the civil rights statute, Title VII protections are not afforded to mere independent contractors. Companies were properly granted summary judgment in career agent's Title VII sex discrimination action because the agent was not an employee under 42 U.S.C.S. § 2000e(f) but was an independent contractor as the companies did not control the manner and means by which the agent sold their financial products. <u>Murray v. Principal Fin. Group, Inc.</u>, 613 F.3d 943 (9th Cir. 2010). <u>See</u> also <u>Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440 (2003) (physician considered independent contractor).

13. Not only did Plaintiff execute an Independent Contractor agreement as to her status, Apex did not manage, dictate or control the work she did inside the homes of their clients. She was free to perform such nursing work as she alone saw fit.

14. In addition, Plaintiff's work was performed in residential homes, not at Apex (other than her making office visits for billing, to use Apex's WIFI and/or computers. Plaintiff received 1099s and signed a W-9 form for all work she performed via Apex.

15. In addition, it is uncontested that Plaintiff worked intermittently for Apex, picking up work when and as *she* chose rather than working on a fixed scheduled, as if she were

an employee of Apex, which she was not. All the indicia set forth in <u>Murray v Principal Fin Group</u> favor finding Plaintiff to have been an independent contractor.

16. Secondly, Plaintiff also cannot state a claim upon which relief can be granted because she suffered no economic damages such as a demotion, pay adjustment or termination of her independent contractor status with Defendant Apex.

17. Likewise, there is no evidence in this case that Plaintiff earned less money or was in some fashion "penalized" by Defendants for anything which Plaintiff perceives Apex or Defendant Sesay to have done to her.

18. To the contrary, Defendant Sesay was asked on page 70 of his deposition:
    *Question*: Did you ever make an explicit connection between any sexual acts between the two of you and her job?
    *Answer*: No
    *Question*: On either occasion whenever she was looking for a job for (sic) you, did you ever bring up any sexual topics?
    *Answer*: No. I was always willing to give her a job, always.
    <u>See</u> NT 70, attached hereto as exhibit "C."

19. Since Plaintiff suffered no economic damages as a result of Defendant Sesay's alleged sexual harassment of her, and since she never treated for her alleged emotional distress as a result of it, her case should be dismissed as a matter of law because she cannot make out a claim upon which relief can properly be granted. Pennsylvania tort law requires that emotional distress damages be proven by

competent medical evidence. <u>Kazatsky v. King David Memorial </u>Park, 515 Pa. 183, 527 A.2d 988 (1987). Here there is no medical evidence of emotional distress or physical manifestations thereof, let alone "competent" medical evidence.

20. Indeed, Plaintiff mutually engaged in "off color" text messages with Defendant Sesay, including asking him for money unrelated to her job performance and outside the scope of her job related activities (such as asking to work more hours, a different schedule, a pay increase, etc.). <u>See</u> 11 page text string collectively attached hereto as exhibit "D."

WHEREFORE, Plaintiff respectfully requests that the instant Motion for Summary Judgment be granted and that Plaintiff's case be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**FREUNDLICH & LITTMAN, LLC**

**DATE:** <u>1/25/22</u>     **BY:**_____/s/_____
David B. Kline, Esquire (**I.D. # 58733**)
1425 Walnut Street, Suite 200
Philadelphia, PA 19102

*DKline@FreundlichandLittman.com*
**T:** (215) 545-8500
**F:** (215) 545-8510

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Secret Lincoln,<br><br>   Plaintiff,<br><br> v.<br><br>Apex Human Services, LLC and Mohamed Lamin Sesay<br><br>   Defendants. | Case No. 2:21-cv-0032 |

# **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. APPLICABLE LEGAL STANDARD

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex Corp., 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). If, however, the non-moving party "fails to make a *showing sufficient to establish the existence of an element essential*

to *[the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial.*"

Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffmann-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir. 2007) (emphasis supplied).

II.     APPLICATION OF LAW TO FACTS OF CASE

There is a mutually executed Independent Contractor Agreement in this case. Plaintiff does not deny this fact, she merely testified that is a sad thing that sometimes people, including herself, don't read contracts. See Lincoln Deposition Testimony, NT 32-33 as follows:

> Q. If there's a document that you signed that says you were an independent contractor, would you agree that you signed that or do you believe you never signed a document that called you or treated you as an independent contractor?
>
> A. Okay. So I really don't know how to answer that question because I mean, it's sad to say, we get paperwork and stuff, just sometimes you read the first few and then you just go ahead and sign, sometimes you don't. I've been, you know, one of those persons, which I shouldn't do, I sign. So if my signature is on something, I'm telling you right now that nothing about being an independent contractor, not an independent contractor, none of those things was explained to me.
>
> Q. Do you remember receiving any documents that you may have signed in which being an independent contractor was explained in the document?
>
> A. I am not sure 'cause I signed a lot of

> documents. Some of them, to be honest, I would
> just sign it and not even pay attention, so
> I'm really not sure.

Obviously, Defendants were under no duty to "explain" the Independent Contractor Agreement to Plaintiff and cannot be faulted for Plaintiff's decision to sign it without having reading it. The fact that there is a contract defeats the need to weigh the balancing test of independent contractor vs employee, as espoused by the afore cited case law. However, the Plaintiff was free to perform her work in any matter she saw fit, using her judgment as a registered nurse. She had total autonomy in how she did her job, what services she would perform and other than submitting time sheets and borrowing Apex's computers, hers was not an office job subject to the right of control by Sesay. This case should properly be dismissed for this reason alone, that Plaintiff is bound by the terms of the contract she freely signed.

In addition, there is uncontroverted evidence in this case that Plaintiff's job security was never threatened, her pay was not conditional on anything other than doing her job and she suffered no punitive or retaliatory job action for any wrongs she perceives Sesay to have committed against her.

<u>See</u> Sesay NT 69-70, already attached as exhibit "C."

Q: Did you ever make any threats toward her?
A: No.


Q: Did you ever make an explicit connection between any sexual acts between the two of you and her job?

A: No.

Q: On either occasion whenever she was looking for a job for you, did you ever bring up any sexual topics?

A: No. I was always willing to give her a job, always.

In fact, Plaintiff was promoted from a regular RN independent contractor to an RN supervisor independent contractor. In both roles, her primary work was performed outside the Apex office and in the homes of its patients. Despite Plaintiff's allegations of misconduct by Sesay, he still wanted to employ her. Therefore, this case should be dismissed on that basis as well.

Plaintiff did not testify that her job was in any way tied to her performing or consenting to any sexual acts, nor that she felt her job was in jeopardy unless she did something of a sexual nature to benefit Sesay. In fact, she essentially received a promotion, from regular RN to RN supervisor. Mr. Sesay testified he always needed RNs, even right at the time he was giving his deposition. See Sesay NT 57-58, attached hereto as exhibit "E."

> Q: Did you have an open position for a nursing supervisor that you were looking to fill?
>
> A: Yes. We always have open positions, always. Even right now I need about ten. I need a lot of them.
>
> Q: At the time that you gave Ms. Lincoln that job as a nursing supervisor, was there a nursing supervisor job posted on Indeed?
>
> A: I can't recall, but like I said, you can do walk-ins and ask for a position and if it's available, yes, you'll be interviewed. With her, it was easy, come in the second time. Because she was already there in 2019, she had worked at as (sic) contractor at the home of the patient just like everybody else. She left, came back. So it was for her to come back…"

Therefore, there is no evidence in this case that Plaintiff suffered any kind of negative job action as retaliation or punishment for rebuking the alleged and unwitnessed advances of Defendant Sesay. There is also no evidence in this case that Plaintiff treated with a medical professional for any of her alleged emotional injuries.

WHEREFORE, Plaintiff respectfully requests that the instant Motion for Summary Judgment be granted and that Plaintiff's case be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**FREUNDLICH & LITTMAN, LLC**

**DATE:** 1/25/22  **BY:** _____/s/_____
David B. Kline, Esquire (**I.D. # 58733**)
1425 Walnut Street, Suite 200
Philadelphia, PA 19102

*DKline@FreundlichandLittman.com*
**T:** (215) 545-8500
**F:** (215) 545-8510

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Secret Lincoln,<br><br>      Plaintiff,<br><br>  v.<br><br>Apex Human Services, LLC and Mohamed Lamin Sesay<br><br>      Defendants. | Case No. 2:21-cv-0032 |

# ORDER

**AND NOW,** this _____ day of _____, 2022, upon consideration of Defendants' Motion for Summary Judgment and any response thereto, it is hereby ORDERED that this action is DISMISSED, with prejudice.

_____
                                                                                                                              J.

# CERTIFICATE OF SERVICE

I, David B. Kline, Counsel for Defendant Mohamed Sesay, do hereby certify that a true and correct copy of the foregoing Defendant's Motion for Summary Judgment was sent via Electronic Filing to the following:

David Manes, Esquire
Manes & Narahari LLC
Law and Finance Building
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
dm@manesnarahari.com,

**FREUNDLICH & LITTMAN, LLC**

**DATE:** 1/25/22        **BY:**_____/s/_____

David B. Kline, Esquire (**I.D. # 58733**)
1425 Walnut Street, Suite 200
Philadelphia, PA 19102

*DKline@FreundlichandLittman.com*
**T:** (215) 545-8500
**F:** (215) 545-8510